IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 1:22-CR-178-7 |
| | ) | |
| ADONIS MARTINEZ AYALA, | ) | Hon. Michael S. Nachmanoff |
| | ) | |
| Defendant. | ) | |

**ADONIS MARTINEZ AYALA'S MOTION FOR
DISCLOSURE OF IDENTITY OF CONFIDENTIAL INFORMANTS
OR FOR EARLY DISCLOSURE OF *BRADY* MATERIAL**

Adonis Martinez Ayala, through counsel, respectfully moves the Court to enter an order directing the government to: (1) disclose the identity of all the confidential informants, including those who contributed to search warrants revealing information against Mr. Martinez Ayala; (2) for early disclosure of the identity of trial witnesses; and (3) for a protective order limiting disclosure of this information to defense counsel only. In the alternative, Mr. Martinez Ayala moves for early disclosure of *Brady* material, including material relating to the credibility of these witnesses.

*Background*

Mr. Martinez Ayala is charged with conspiring to participating in a racketeering enterprise (Count One), and conspiring to commit murder in aid of racketeering (Count Eight). (Doc. 113) Mr. Martinez Ayala is also implicated in multiple overt acts, including conspiring to commit murder and drug trafficking, and on information and belief, the government will seek to indictment Mr. Martinez Ayala for additional charges, including conspiring to commit murder in aid of racketeering and committing one or more murders in aid of racketeering. During its investigation of the underlying charges, the government has relied upon information provided by confidential

informants who have implicated Mr. Martinez Ayala, to obtain search warrants to gather evidence against Mr. Martinez Ayala. The government has not disclaimed reliance on these witnesses at trial and it is anticipated that some or all of the confidential witnesses will testify at trial.

### Introduction

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This right entitles a defendant to competent representation by counsel which, in turn, imposes on counsel the duty to make a reasonable factual and legal investigation to develop appropriate defenses. *Sneed v. Smith,* 670 F.2d 1348, 1353 (4th Cir. 1982) ("To meet this standard, an attorney must, at a minimum, 'conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial.'" (quoting *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968))).

A person's right to a defense "is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes* 547 U.S. at 324-25 (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). (quotation alteration marks omitted). Therefore, the Constitution places limits on the government's ability to withhold material evidence from the defense. *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004) ("[T]he Supreme Court has held that the defendant's right to a trial that comports with the Fifth and Sixth Amendments prevails over the governmental privilege."); *see Roviaro v. United States*, 353 U.S. 53, 63-65 (1957) (reversing trial court for permitting the government to withhold the identity of a material non-testifying witness);

*Moussaoui*, 382 F.3d at 476 (stating that, where a witness could offer material testimony that is essential to a defense, the government may not withhold that testimony without facing sanctions).

Without knowing the identity of the witnesses, and well in advance of trial, Mr. Martinez Ayala will be deprived of this right.  Mr. Martinez Ayala must fully investigate each identified witness.  He must find out whether the witnesses had any bias against him, whether they were known to be untruthful, whether they were in any position to know what they claim to know, and whether the alleged conversations took place.  In many cases, this will involve tracking down a witness's location on a given time and date, or locating another individual who is the only source of information about a given witness.  The results of this investigation may reveal information - a precise time for which an alibi can be sought, for example, or an alternative suspect - that will require yet further investigation.

Disclosure of *Giglio* information, although essential, would not be an adequate substitute for the ability to conduct an independent investigation.  There might be important information that the government does not know but which a defense investigator would be able to uncover.  For example, knowledgeable parties might be willing to cooperate with the defense but not with the government.  Additionally, the government might have failed to follow up on material in its possession, or might not appreciate the exculpatory nature of that material.

Proper investigation and analysis invariably require extensive time and effort.  Moreover, these tasks must be completed significantly before trial begins.  Therefore, the requested information must be disclosed as soon as possible.  *See United States v. Burke*, 571 F.3d 1048, 1054) (10th Cir. 2009) (citing *Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001); *United States v. Devin*, 918 F.2d 280, 290 (1st Cir. 1990)) (describing the harmful impact of late disclosure upon investigation, trial preparation, and strategy); *cf. United States v. Gil*, 297 F.3d 93, 106 (2d Cir.

2002) ("Although the Bradford memo was produced before trial, the defense was not in a position to read it, identify its usefulness, and use it.").

### *Argument*

In order for Mr. Martinez Ayala to be able to meaningfully prepare a defense, it is imperative that the Court order the government to disclose the identity of these confidential informants.  Disclosure of their identities is essential to Mr. Martinez Ayala's mounting any motions to suppress evidence derived from information provided by cooperating informants. Additionally, these informants might testify against Mr. Martinez Ayala at trial.  Mr. Martinez Ayala could rebut such testimony if and only if he is informed of the witnesses' identity such that he can conduct meaningful investigation of the witnesses' backgrounds and their claims regarding Mr. Martinez Ayala's involvement in the offense.

The government has also indicated that witness testimony will implicate Mr. Martinez Ayala in various crimes including murders, attempted murders, and assaults.  The testimony of a single witness, if believed, could be enough to support a guilty verdict.  *See, e.g.*, *United States v. Wheeler*, 257 F. App'x 693, 694 (4th Cir. 2007) (citing *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997)) ("[T]he uncorroborated testimony of one witness may be sufficient to sustain a conviction.").  Indeed, both the murder and attempted murder charges appears to rely almost entirely upon cooperator testimony.  It is no exaggeration to say that Mr. Martinez Ayala's life as a free man depends on his ability to challenge this testimony, which requires that he know the witnesses' identities.

Mr. Martinez Ayala understands that, given the nature of the charges against him, the Court may have concerns for the safety of any witnesses who were identified.  To address these concerns, Mr. Martinez Ayala asks the Court to provide this information for counsel's eyes only, for the sole

purpose of use in this case.  This restriction on dissemination of information should resolve the Court's doubts as to witness security.  *See United States v. Wallace*, Crim. 2011 U.S. Dist. LEXIS 85599, at *10-11 (S.D. W.Va. 2011) (compelling disclosure of an informant's identity but restricting defendant's access to that disclosure).

Finally, if the Court declines to order express identification of the confidential sources, it should enable Mr. Martinez Ayala to prepare his defense by ordering disclosure of all *Brady* material - including material relating to witness credibility - as soon as is practicable.

**I.  Mr. Martinez Ayala Has Shown That Early Disclosure of Trial Witness Identities is Material and Reasonable.**

The Court has the authority to compel a party to disclose its witnesses.  *United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir. 1996) (citing *United States v. Jackson*, 508 F.2d 1001, 1007 (7th Cir. 1975); *United States v. Seymour*, 576 F.2d 1345, 1348-49 (9th Cir. 1978)) ("A trial court's exercise of its Rule 16 powers to require parties to . . . disclose witnesses is generally permissible."); *United States v. Stroop*, 121 F.R.D. 269, 274-75 (E.D.N.C. 1988) (citing authority from many circuits) ("[T]he general discretion of district courts to compel the government to identify its witnesses is widely acknowledged."); *see also Will v. United States*, 389 U.S. 90, 99 (1967) (citing *United States v. White*, 370 F.2d 559 (7th Cir. 1966); *United States v. Debrow*, 346 U.S. 374, 378, (1953)) ("[I]t is not uncommon for the Government to be required to disclose the names of some potential witnesses . . . where this information is necessary or useful in the defendant's preparation for trial.").  Indeed, it would be odd if a procedure that is mandatory in a civil case were unavailable to a criminal defendant, who faces life imprisonment and has a constitutional right to present a defense.  *Compare* Fed. R. Civ. P. 26(a)(3)(A)(i) *and* L.R. 106.2.i. (requiring parties to disclose witnesses sufficiently in advance of trial).  To warrant disclosure, "a defendant must make a specific or 'particularized' showing that such disclosure is both material

to the preparation of his defense and reasonable in light of the circumstances." *Stroop*, 121 F.R.D. at 275 (citing *United States v. Price*, 448 F. Supp. 503 (D. Colo. 1978), and the authority therein).

Here, as in *Stroop*, Mr. Martinez Ayala has made particularized showing of both reasonableness and materiality.  This is a complicated case, charging five defendants (with at least ten unindicted coconspirators) with a conspiracy lasting several years (and entailing several murders).  (Doc. 113 at 5-19) (charging a conspiracy "on a date unknown, but at least from in and around 2017, and continuing through" at least October, 2023).  The discovery involves a staggering amount of material: over 2.0 terabytes of data.   It would not be feasible for any defendant to acquire a full understanding of the facts and infer the identity of the witnesses (assuming that to do so is even possible).  *See Stroop*, 121 F.R.D. at 275 (finding disclosure appropriate because "[t]his case involves a complex paper trail with multiple defendants").

Moreover, the most important evidence against Mr. Martinez Ayala will come from the testimony of these unidentified witnesses.  The government has indicated it intends to use multiple confidential informants to prove Mr. Martinez Ayala guilty of at least on murder – and possible additional murders under a new indictment - and conspiracy to commit murder in aid of racketeering.  The first of these alone would render Mr. Martinez Ayala eligible for a life sentence. *See* 18 U.S.C. § 1963(a).  Yet, Mr. Martinez Ayala is aware of no physical evidence linking him to the murder.  Mr. Martinez Ayala needs to know the witnesses' identities, soon, so that he is able to fully investigate the veracity of their claims and other matters bearing on the reliability of the witnesses, including character for truthfulness and bias.  *Stroop*, 121 F.R.D. at 275 (finding disclosure appropriate because "critical, dispositive evidence in this case will flow not only from that paper trail, but from anecdotal testimony" and many witnesses "are within the control of the government and are not openly available to the defense for investigation and interview").

6

The same is true for witnesses who will testify that they purchased drugs, directly or indirectly, from Mr. Martinez Ayala.  To defend against the various charges involving distribution or intended distribution of controlled substances necessarily requires undermining the witnesses' testimony that Mr. Martinez Ayala sold them drugs.  *See United States v. Hutson*, 2010 U.S. Dist. LEXIS 26850, at *6 (W.D. Va. 2010) (compelling disclosure of unidentified informants, even when there was no indication that they would testify at trial, because their knowledge of the defendants' alleged drug-dealing showed that they had "relevant and significant testimony to offer").

It is vital that the identity of these witnesses be disclosed well in advance of trial.  As described in the Introduction, investigation is a time- and resource-intensive process.  So is incorporating the fruits of that investigation into trial strategy.  Both are likely to be even more so in this case, given the length of trial and the anticipated number of witnesses.  To disclose this information shortly before trial would prevent Mr. Martinez Ayala from being able to properly investigate it, would detract from his abilities to address other issues, and would prevent him from making effective use of the results.

Of course, witness security may weigh against disclosure of witness identities.  *See Stroop*, 121 F.R.D. at 275-76.  As described above, however, there are ways to protect witnesses and preserve government investigations while also upholding Mr. Martinez Ayala's right to a defense. Rather than denying Mr. Martinez Ayala's motion, the Court should issue a suitable protective order.

## II.   Under *Roviaro*, Mr. Martinez Ayala is Entitled to Disclosure of Informants' Identities.

Under *Roviaro v. United States*, 353 U.S. 53 (1957), the government's qualified privilege to preserve the identity of confidential informants must be balanced against a defendant's right to

present a defense.  This balancing requires the Court to consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and the informant's role in the specific investigation.  *United States v. D'Anjou*, 16 F.3d 604, 609 (4th Cir. 1994) (citing *Roviaro*, 353 U.S. at 62; *United States v. Blevins*, 960 F.2d 1252, 1258 (4th Cir. 1992)).   Under this balancing test, the Court should compel disclosure of the informants' identities.

> **A.     Mr. Martinez Ayala is Entitled to Identification of Testifying Witnesses.**

The *Roviaro* framework applies to informants who contributed to the investigation of the defendant but who do not testify at trial.  *See Roviaro*, 353 U.S. at 55 ("John Doe was not produced, identified, or otherwise made available."); *D'Anjou*, 16 F.3d at 609 (stating that the informants were not called at trial); *McLawhorn v. North Carolina*, 484 F.2d 1, 3 n.8 (4th Cir. 1973) (describing how the defense was unable to call the witness at trial); *see also Roviaro*, 353 U.S. at 61 ("Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause.").   Therefore, the *Roviaro* balancing is inapplicable to witnesses who will testify at trial.  As described above, disclosure of testifying witnesses is within the Court's discretion, and the Court should order such disclosure.

Nevertheless, out of an excess of caution, Mr. Martinez Ayala will apply the *Roviaro* analysis.  Once the appropriate precautions are taken, the *Roviaro* balancing supports disclosure. For the reasons given above, disclosure of the witnesses is of vital importance to Mr. Martinez Ayala's defense.  Indeed, it is hard to imagine anything more fundamental to a defense than the ability to fully cross-examine an adverse witness.  The severity of the charged crime further supports disclosure.  Moreover, disclosure is typically appropriate where - as here - the informant is the only person (other than the defendant) who can testify as to the accuracy of the defendant's

purported statements.  *See Roviaro*, 353 U.S. at 64 ("[T]he Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case.  The only person, other than petitioner himself, who could controvert, emplain [sic] or amplify Bryson's report of this important conversation was John Doe.")

That some trial witnesses did not participate in the charged crime does not weigh against disclosure.  Although a *Rovario* analysis typically finds disclosure to be more appropriate for a participant than a tipster, a "tipster" is one who provides information to law enforcement *before* an arrest, not one who testifies at trial.  *See McLawhorn*, 484 F.2d at 5 (describing a tipster as one who "merely provides a lead or tip that furnishes probable cause for a search and seizure"); *Wallace*, 2011 WL 3321472, at *3 (distinguishing between a material witness and a tipster). Similarly, any concerns about witness security could be addressed through a suitable protective order.  Therefore, Mr. Martinez Ayala would be entitled to disclosure even if the Court were to apply the *Roviaro* analysis.

**B.    Mr. Martinez Ayala Is Entitled to Identification of Non-Testifying Informants.**

At this stage, it is not clear that all prior informants will testify at trial.  Nevertheless, Mr. Martinez Ayala remains entitled to the identity of all witnesses, including those who do not testify. If the Court does not compel disclosure of the identity of all non-testifying informants, the Court should ensure disclosure of all witness identities by precluding the government from calling witnesses whose identity it has not timely disclosed.

**1.    Mr. Martinez Ayala is Entitled to Identification of any Witnesses Who Conducted the Controlled Buys.**

Here, the most important factor is the informants' role in the investigation.  It is well settled in the Fourth Circuit that the government must disclose the identity of any informant who

participates in the criminal transaction underlying the purported drug distribution and/or conspiracy. *McLawhorn*, 484 F.2d at 5 (citing *Roviaro* and authority from other circuits) ("[D]isclosure of the informant's identity is required where the informant is an actual participant, particularly where he helps set up the criminal occurrence."); *see United States v. Price*, 783 F.2d 1132, 1139 (4th Cir. 1986) (reversing conviction of defendant because failure to disclose identity of informant who participated in the crime deprived the defendant of a fair trial); *Hutson*, 2010 WL 1141529, at *2 (compelling disclosure of identities of informants who witnessed defendants possess or distribute drugs, engaged in drug transactions with defendants, or assisted defendants to possess or distribute drugs). In this case, if any informants arranged and carried out the controlled buys that provided the basis for challenged search warrants. Moreover, they are almost certainly the sole witnesseses to acts that the government is likely to introduce as evidence that Mr. Martinez Ayala possessed and distributed controlled substances, as charged. Under these circumstances, a defendant is not required to prove specific need of the informant's testimony. *McLawhorn*, 484 F.2d at 7 ("Where participation, per se, qualifies the informant as a material witness, to require the accused to present proof of a need for the informant's testimony . . . places an unjustifiable burden on the defense.").

Regardless, even if the Court requires proof, Mr. Martinez Ayala is able to present it. As stated above, disproving any controlled buys is of vital importance, given the crime charged and Mr. Martinez Ayala's anticipated defenses. Even if a given informant will not testify at trial, investigating each purported "informant" is necessary to undermine the government's investigation more broadly. Furthermore, identifying and challenging the testimony of these witnesses is essential to potential motions to suppress warrants derived primarily from drug distribution involving these witnesses. Therefore, the remaining *Rovario* factors also support

disclosure.  Should the Court have any doubt about the need for the informants' testimony, it should hold an *in camera* hearing to ascertain the informants' knowledge and testimony.  *See McLawhorn*, 484 F.2d at 5 n.13 (citing *United States v. Jackson*, 384 F.2d 825, 827 (3d Cir. 1967)).

Against these factors is balanced the allegation of murdering a cooperating witness.  While not admitting he was involved in the charged acts, Mr. Martinez Ayala acknowledges the charges present reasonable concerns for these informants' safety.  Given its importance to his defense, however, the Court should not deprive Mr. Martinez Ayala of any opportunity to investigate the informants' testimony.  Rather, the Court should restrict the information to only those who need to know it.  Mr. Martinez Ayala concedes that, at this stage, he is not among them.  *See Wallace*, 2011 WL 3321472, at *4 (finding it appropriate to shield a source's identity from the defendant but leaving open possible disclosure of material disclosure obtained from the source).  Additionally, the Court should enter a protective order restricting use of the information to this litigation.  Therefore, even if counsel were (very improbably) to learn of other investigations involving the same informant, counsel would be precluded from undermining the integrity of those investigations.

> **2.    Mr. Martinez Ayala Is Entitled to Identification of the Witnesses Who Provided the Government Information Supporting the Murder Charges.**

Despite their lack of participation in the charged offense, the *Roviaro* factors support disclosure of non-testifying informants providing information that ties Mr. Martinez Ayala to any charges involving murder (whether completed, attempted, or conspired).  The charges are as serious as could be conceived, potentially resulting in a sentence of life imprisonment.  If the government had chosen to do so, it could have sought the death penalty.  Therefore, the charges support disclosure.  Likewise, the witnesses' identities are of crucial importance to Mr. Martinez Ayala's anticipated defenses.  First, they are once again key to challenging an important search

warrant.  Numerous materials allegedly incriminating Mr. Martinez Ayala, including digital communications and location data, were obtained through use of these statements.  Second, the unreliability of these informants' statements will undermine the government's investigation more generally and demonstrate the government's wrongful fixation on Mr. Martinez Ayala.  *See Juniper v. Zook*, 876 F.3d 551, 570-71 (4th Cir. 2017) (citing *Dennis v. Pa. Dep't of Corr.*, 834 F.3d 263, 302 (3d Cir. 2016); *Bies v. Sheldon*, 775 F.3d 386, 401 (6th Cir. 2014)) (finding withheld evidence to be material because, if it had been available to defense attorneys, "they could have raised doubts about the thoroughness of the investigation by questioning whether the police adequately pursued that alternative suspect, and if they did not, why they did not"); *see also Kyles v. Whitley*, 514 U.S. 419, 446 n.15 (1995) (rejecting the argument "that for jurors to count the sloppiness of the investigation against the probative force of the State's evidence would have been irrational," because under some circumstances "indications of conscientious police work will enhance probative force and slovenly work will diminish it"); *United States v. Quinn*, 537 F. Supp. 2d 99, 115 (D.D.C. 2008) (recognizing the importance of "attacking the integrity of the government's investigation").

### 3.    Alternatively, the Court Should Compel Disclosure of *Brady* Information Relating to These Witnesses.

If the Court denies the disclosure of codefendants' identities, it should order prompt disclosure of *Brady* materials, which include information and evidence that would undermine the testimony of government witnesses.  *See Giglio v. United States*, 405 U.S. 150 (1972) (holding that *Brady v. Maryland*, 373 U.S. 83 (1963), requires disclosure of evidence relating to witness credibility); *United States v. Frye*, No. 5:01-CR-30058, 2002 WL 385574, at *2-3 (W.D. Va. Feb. 20, 2002) (finding efficiency and justice support early disclosure of *Giglio* materials).

*Giglio* information can and should be disclosed, even if witness identities are not.  *Giglio* information does not raise any concerns about overly broad disclosure, because it is limited to information that is material and favorable to Mr. Martinez Ayala's defense.  In other words, information about a witness must be produced under *Giglio* only if the government has reason to believe a witness is not trustworthy.[1]  Additionally, *Giglio* materials are less likely to implicate witness safety: a police report declaring an informant unreliable might identify that witness by number, for example, or a document could have certain information redacted (provided that doing so would not reduce its value to Mr. Martinez Ayala).  Therefore, courts frequently order prompt disclosure of *Giglio* materials when informant statements are at issue, even when denying a motion to identify confidential informants or witnesses.  *See Frye*, 2002 WL 385574, at *2-3 (denying request for disclosure of identities but compelling early disclosure of *Giglio* materials); *United States v. King*, 121 F.R.D. 277, 279-81 (E.D.N.C. 1988) (denying motion for witness list but ordering disclosure of *Brady* materials forthwith, emphasizing that this disclosure includes materials that would undermine witness testimony); *Shrader v. Riddle*, 405 F. Supp. 752, 756 (1975) (holding that a state court was not obligated to require a list of witnesses but was required to produce favorable material evidence, including *Giglio* material); *United States v. Anderson*, 368 F. Supp. 1253, 1262-63 (D. Md. 1973) (citing *United States v. Sink*, 56 F.R.D. 365 (E.D. Pa. 1972)) (denying defendant's motion for a witness list but compelling disclosure of *Brady* material contained in grand jury materials that were not protected by the *Jencks* Act).

The government should bear in mind the *Brady* disclosure requirements apply to information that may support suppression of evidence, as well as to exculpatory trial material.

---

[1] As stated above, there will often be information - including cause to doubt a witness's testimony - that is not known to the government.  Therefore, to limit relief to early disclosure of *Giglio* information would risk insufficiently broad disclosure.

*United States v. Castellanos*, 716 F.3d 828, 840 n.6 (4th Cir. 2013) (Davis, J., dissenting) (quoting *United States v. Gamez–Orduno*, 235 F.3d 453, 461 (9th Cir. 2000)) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."); *Biles v. United States*, 101 A.3d 1012, 1019 (D.C. 2014) (citing *Gamez-Orduno*, 235 F.3d at 461; *Nuckols v. Gibson*, 233 F.3d 1261, 1266-67 (10th Cir. 2000); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990)) ("The only courts we know to have squarely addressed the issue on the merits have held that the failure to disclose information material to a ruling on a Fourth Amendment suppression motion can constitute a *Brady* violation."). Additionally, such material must be presented in time for defense counsel to make sufficient use of it. *Burke*, 571 F.3d at 1054-56 (10th Cir. 2009) (summarizing authority that *Brady* disclosures must prevent prejudicial delay); *Gil*, 297 F.3d at 105-07 (finding that unexcused delay in production of *Brady* material constituted suppression).

Again, security concerns do not override Mr. Martinez Ayala's right to present a defense. If the Court continues to harbor fears for the safety of witnesses, it may permit the government to submit evidence for *in camera* review. *Frye*, 2002 WL 385574, at *3. Additionally, a witness's own statements would be shielded from immediate release under the *Jencks* Act. The Court should, however, order the government to prioritize disclosure of these materials when it makes its *Jencks* production.

### Conclusion

WHEREFORE, subject to a protective order, the Court should compel the government to disclose, within sixty (60) days, the identity of (1) any witnesses who will testify at trial, (2) the confidential informants who participated in controlled buys involving Mr. Martinez Ayala, and (3)

any witnesses who have otherwise provided information to the government so as to link Mr. Martinez Ayala to any murder, attempted murder, or conspiracy to murder.  If the Court orders disclosure only of the identities of testifying witnesses, it should preclude the government from introducing the testimony of any witness whose identity it does not timely disclose.   In the alternative, the Court should order the government to disclose *Brady* material forthwith.

Respectfully submitted,
Adonis Martinez Ayala
By Counsel

/s/  *Joseph T. Flood*
Joseph T. Flood, VSB #71716
Sheldon & Flood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
(703) 691-8410
(703) 991-7413 (fax)
jflood@sfhdefense.com

*Attorney for Defendant*

/s/ *Eugene V. Gorokhov*
Eugene V. Gorokhov, VSB #73582
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC  20006
(202) 386-6920, ext. 101
(202 765-2173 (fax)
eugene@burnhamgorokhov.com

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, this the 10th day of May, 2024, I caused a copy of the foregoing motion to be served on counsel of record via the District Court's Electronic Case Filing system.

<u>/s/</u> Joseph T. Flood
Joseph T. Flood, VSB #71716
Sheldon & Flood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
(703) 691-8410
(703) 991-7413 (fax)
jflood@sfhdefense.com