IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | Crim. No. 1:22-CR-178-7 |
| ) | |
| ADONIS MARTINEZ AYALA, ) | Hon. Michael S. Nachmanoff |
| ) | |
| Defendant. ) | |

**ADONIS MARTINEZ AYALA'S MOTION FOR DISCLOSURE OF EXPERT TESTIMNY UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 16**

Adonis Martinez Ayala, through counsel, respectfully moves the Court to order timely disclosure of the government's expert testimony pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. The Court should impose a deadline for disclosure of any evidence the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial at least ninety (90) days prior to trial. The Court should also order the government to comply with the requirements of Rule 16 in disclosing its expert testimony.

*Introduction*

Upon request, the government must provide a written summary of evidence it intends to use during its case-in-chief at trial under Rule 702, 703, or 705 of the Federal Rules of Evidence. Fed. R. Crim. P. 16(a)(1)(F). This summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* This requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, Advisory Committee Notes to 1993 Amendment (citing Linda S. Eads, *Adjudication by Ambush: Federal Prosecutors' Use of Nonscientific Experts in a System of Limited Criminal Discovery*, 67 *N.C. L. Rev.* 577, 622 (1989)).

Upon the government's compliance with this request, the defense becomes obligated to provide a similar summary of its own intended expert testimony, if any. Fed. R. Crim. P. 16(b)(1)(C)(i).

The government has suggested it will present expert testimony relating to, at least, ballistics, gang activity, forensic pathology, forensic anthropology, and cell phone and tower communications. The Court should order the government to produce this information no later than July 8, 2024. Upon the government's disclosure, Mr. Martinez Ayala will promptly provide his own summary, as required. The Court should also order all parties to provide in their disclosures all information required by Rule 16.

## *Background*

Mr. Martinez Ayala is charged with conspiring to participating in a racketeering enterprise (Count One), and conspiring to commit murder in aid of racketeering (Count Eight). (Doc. 113) Mr. Martinez Ayala is also implicated in multiple overt acts, including conspiring to commit murder and drug trafficking, and on information and belief, the government will seek to indictment Mr. Martinez Ayala for additional charges, including conspiring to commit murder in aid of racketeering and committing one or more murders in aid of racketeering.

## *Argument*

Mr. Martinez Ayala requires knowledge of the government's anticipated expert testimony so that he may investigate the expert, develop counterarguments, and (if necessary) make suitable preparations to present expert testimony of his own. Moreover, Mr. Martinez Ayala requires disclosure of the government's expert testimony so that he can put the government to its proof regarding the admissibility of its expert testimony. To do so most efficiently and effectively, Mr. Martinez Ayala must be fully informed of the expert testimony in question, well in advance of trial.

I.      **The Court Must Determine the Admissibility of Expert Testimony.**

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court reoriented the law of expert testimony under the Federal Rules of Evidence toward a more rigorous showing as a prerequisite to admissibility. The Court rejected the preexisting tests of admissibility—such as the "general acceptance" test—and instead adopted a requirement of preliminarily demonstrated reliability. The trial court judge was assigned the gatekeeping role of assuring that proffered expert testimony was both closely relevant and reliable.

*Daubert* itself involved proffered scientific expert testimony, and the Court framed the reliability requirement in those terms:

> The subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation . . . . [I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation . . . .

509 U.S. at 589-90 (first omission in original). The Court also emphasized that the relevancy of such testimony to the matters at issue–what the Court termed "fit"–also must be evaluated in terms of scientific validity:

> 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. The study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night.

*Id.* at 591. The Court also enumerated several different criteria that may go into evaluating evidentiary reliability of proposed scientific testimony, including: the "key question" of "whether

3

it can be (and has been) tested," *id.* at 593; "whether the theory or technique has been subjected to peer review and publication," *id.*; and "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error," *id.* at 594.

For several years, there was doubt whether *Daubert*'s standards extended beyond "scientific" evidence. However, in 1999, the Supreme Court resolved those doubts by extending the principles of *Daubert* to all forms of expert testimony, in *Kumho Tire Co v. Carmichael*, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline,'" 526 US. 137, 149 (1999) (alteration in original) (quoting *Daubert*, 509 U.S. at 592). *Kumho* involved an expert on tire wear, whose expertise supposedly depended upon his long experience in the industry. Nevertheless, the Supreme Court upheld the district court's exclusion of his testimony, on a detailed analysis that followed the principles of Daubert and emphasized the rigor and specificity of the test of admissibility:

> [T]he specific issue before the court was not the reasonableness in general of a tire expert's use of a visual and tactile inspection to determine whether overdeflection had caused the tire's tread to separate from its steel-belted carcass. Rather, it was the reasonableness of using such an approach, along with Carlson's particular method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*. That matter concerned the likelihood that a defect in the tire at issue caused its tread to separate from its carcass . . . . The relevant issue was whether the expert could reliably determine the cause of this tire's separation."

526 U.S. at 153-54 (emphasis in original).

In 2000, the *Daubert-Kumho* doctrine was codified by substantial amendments to Rules 701-703 of the Federal Rules of Evidence. Rule 702 (the key provision) now requires that proffered expert testimony assist the trier of fact with understanding the evidence or determining

4

a fact in issue *and* meet three specific criteria: the testimony is based upon sufficient facts or data; the testimony is the product of reliable principles and methods; and the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. "[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, Advisory Committee Note to 2000 Amendments. Whether the proponent has established these requirements is determined by the district court judge. *See, e.g.*, *Nease v. Ford Motor Co.*, 848 F.3d 219, 230-31 (4th Cir. 2017) (reversing district court for abandoning gatekeeping function by assuming that all challenges to expert testimony affected weight rather than admissibility).

All of these rules apply equally to criminal cases. *See, e.g.*, *United States v. Johnson*, 617 F.3d 286, 294-95 (4th Cir. 2010) (reversing district court for improperly admitting, in a criminal case, testimony that had not been shown to be reliable under Rule 702). To ensure that these standards are met, the government must provide the information required by Rule 16.

**II.    To Avoid Delays at Trial, the Court Should Order the Government to Fully Disclose its Expert Testimony by November 16, 2021.**

As discussed above, the standard for admission of expert testimony is rigorous. *See United States v. Willock*, 696 F. Supp. 2d 536, 550-76 (D. Md. 2010) (quoting, and adopting, report and recommendation of magistrate judge in considering, at length, whether to admit evidence of a ballistics expert), *aff'd sub nom. United States v. Mouzone*, 687 F.3d 207, 215-17 (4th Cir. 2012). Therefore, the Federal Rules of Criminal Procedure mandate the exchange of information regarding expert testimony in order to allow for the timely resolution of evidentiary issues. *See* Fed. R. Crim. P. 16(a)(1)(G), (b)(1)(C) (requiring that written summaries of expert witness testimony "must describe the witness's opinions, the bases and reasons for those opinions, and the

witness's qualifications"); *Willock*, 696 F. Supp. 2d at 581 (quoting report and recommendation of magistrate judge in recommending that a continuance be granted if requested, to counteract prejudice caused by government's failure to timely comply with obligations of Rule 16).

Additionally, cross-examination has been called the "'greatest legal engine ever invented for the discovery of truth." *Lilly v. Virginia*, 527 U.S. 116, 123 (1999) (quoting *California v. Green*, 399 U.S. 149, 158 (1970)). Yet, "it is difficult to test expert testimony at trial without advance notice and preparation[.]" Fed. R. Crim. P. 16, Advisory Committee Notes to 1974 Amendment. To enable the defense to prepare for cross-examination is another necessary function of Rule 16.

Courts have recognized that expert testimony carries particular weight with juries. *See, e.g.*, *Nease*, 848 F.3d at 231 ("The main purpose of Daubert exclusion is to protect juries from being swayed by dubious scientific testimony." (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011))). Therefore, it is necessary to ensure that the government's testimony meets the rigorous requirements for the admissibility of expert testimony and that the defense is able to perform effective cross-examination. The most efficient way of doing so is to require the government to notify the defense of any expert testimony well in advance of trial, so that its admissibility may be resolved before trial and the defense is fully able to prepare its cross-examination in advance. Accordingly,

> the Government should be required to strictly and timely comply with its Fed. R. Crim. P. 16 obligations regarding the opinions to be offered . . . in sufficient detail and sufficiently far in advance of motions deadlines or trials as to enable defense counsel to evaluate the conclusions and bases, determine whether to engage experts to test them, and if appropriate, challenge them.

*Willock*, 696 F. Supp. 2d at 570 (quoting, and adopting, report and recommendation of magistrate judge).

6

### III. Mr. Martinez Ayala Is Not Required to Provide an Expert Disclosure Until the Government Has Done So.

Rule 16 does not require a defendant to disclose his expert witness until "the defendant requests disclosure . . . and the government complies[.]" Fed. R. Crim. P. 16(b)(1)(C)(i); *see also* Fed. R. Crim. P. 16, Advisory Committee Notes to 1993 Amendment ("*Once the requested information is provided*, the government is entitled, under (b)(1)(C) to reciprocal discovery of the same information from the defendant." (emphasis added)).  As such, it would not be appropriate to order that Mr. Martinez Ayala disclose his expert until the government has complied with its own obligations.  Once the government has fully disclosed its expert, as required, Mr. Martinez Ayala will quickly provide the government with the required information, if any.

### *Conclusion*

WHEREFORE, the Court should order the government to specifically disclose and describe its expert's opinions, as required by Rule 16(a)(1)(G), no later than July 8, 2024.  The Court should further provide that such disclosures of the "bases and reasons" set forth the requirements for admissibility under Rule 702 of the Federal Rules of Evidence, including "reliable principles and methods" and reliable applications of such principles and methods to the facts of the case as are required. In addition, the Court should require the accompanying submission of any documents or objects, or results or reports of any tests or examinations, or other facts or data, as were relied upon by its disclosed expert.  *See* Fed. R. Crim. P. 16(a)(1)(E), 16(a)(1)(F); *see also* Fed. R. Evid. 703.

Respectfully submitted,
Adonis Martinez Ayala
By Counsel

/s/  *Joseph T. Flood*
Joseph T. Flood, VSB #71716
Sheldon & Flood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
(703) 691-8410
(703) 991-7413 (fax)
jflood@sfhdefense.com

*Attorney for Defendant*

/s/ *Eugene V. Gorokhov*
Eugene V. Gorokhov, VSB #73582
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC  20006
(202) 386-6920, ext. 101
(202 765-2173 (fax)
eugene@burnhamgorokhov.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that, this the 10th day of May, 2024, I caused a copy of the foregoing motion to be served on counsel of record via the District Court's Electronic Case Filing system.

*/s/* Joseph T. Flood
Joseph T. Flood, VSB #71716
Sheldon & Flood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
(703) 691-8410
(703) 991-7413 (fax)
jflood@sfhdefense.com
